Good morning, your honors. Russell Handy representing the plaintiff and appellant here. If I might reserve three minutes for rebuttal. Sure. The issue obviously before the court is whether or not a business like Starbucks, who has an as-built compliant counter, which is long enough and high enough, meets the regulations otherwise, can lawfully place a whole bunch of items, merchandise, display items, and other things on its sales counter, thereby reducing the usable and clear space, or if that's a violation of the ADA. And I think we should start by noting that the Ninth Circuit has weighed in on this very issue twice in recent times. The first one is in the Chapman v. Pier 1 case. And if I might quote the relevant portion, notably, unlike the shopping aisles, which were non-ADA compliant for wheelchair users on all 11 visits Chapman made to the store, there were items on the sales counter on only two or three occasions. Moreover, on those occasions, the Pier 1 employee behind the counter removed the obstructing items. Thus, unlike the aisle situation, Pier 1 did promptly remove the obstructing items from the sales counter. So the Ninth Circuit was fully on board with the idea that if you don't remove the items, if there's not isolated and temporary impediment to use, then there can be a violation. And in Kalani v. Starbucks, which was just two years later, 2017, the court doubled down on this judgment to the plaintiff because Starbucks, quote, failed to maintain a readily accessible 36-inch long sales counter at the store, as required under the ADA. Why? Quote, the evidence established that the items placed on the store's point-of-sale counter were not isolated or temporary interruptions, but rather recurring barriers to access by patrons and wheelchair users. Council, can I ask you a question? Are you saying that Starbucks actually complies with 904, but fails to comply with the CFR 28, CFR 36.211? Is that what your position is now? They comply with 904, but they don't comply with the other provision? Is that what your argument is now? No, not quite. I believe that when it was built, when the carpenter put down his hammer and that the job was done, it complied with 904. Proper height, proper length. But of course, 904 itself says a portion of the counter surface shall be provided. That's in the standard itself. And so, when they open their doors to the public and someone like my clients come in, they're not providing an accessible length of counter surface. That's what's required. So, I don't believe they comply with 904 as they operate their facility. It was built compliant, but as they operate the facility, I do not believe that they're compliant. And here's the other thing I think that's important to keep in mind, is that you've got to think about how this number, this 36-inch length came up with. It was the access board that came up with it. Remember, these are 13 members who are from federal agencies, 12 people appointed by the president who are mostly disabled themselves. They deliver, they work, they use the anthropomorphic dimensions, and they go through notice and rulemaking, they have public hearings, they have comment, they do all these things. And after all that, they came up with a standard. They felt that 36 inches in length, which is not a whole lot, of counter surface needs to be provided to persons with wheelchairs in order to meet the readily usable and accessible standard. But there's an exception to that. I mean, right within that provision, they say or suggest that there can be a counter surface that's less than 36 inches. There are certainly cases and examples when the entire counter is less than 36 inches. It's not the situation here, but there is an exception that says that. But we can't ignore the 36 inches. I mean, these people, the access board, and then adopted by the DOJ came up with that number. That 36-inch number, they're working with the wheelchair user or turning sideways and need to use counter space. It can't be just disregarded or pretend like it's not relevant that the exception swallows the rule and we can have any length at all, and it's just fine for wheelchair users. And so- What does the exception mean then to you? How do you interpret that I think that there are situations where it's not technically feasible to have a 36-inch wide counter. And there are some situations like people thought that like ticket counters or some other situation, if it's not technically feasible to have 36 inches in length, and certainly in alterations and other places where the facilities are already built and we're working under a readily achievable standard, it may not be readily achievable to do something to provide 36 inches. In those circumstances, the DOJ is saying, make sure that the entire counter then is at the right height so they can use every bit of it that's available. That's an exception that makes sense. Judge Fischer thought that made sense. And it doesn't do violence to the rest of the rule. It doesn't violate any of those canons of construction that say we shouldn't interpret something to render superfluous the rest of the rule. This 36 inches means something. And there's a width requirement everywhere. Forward approaches, 30 inches. Alterations, 24 inches. It's important. We can't just ignore it or pretend like the exception says, you can get any length you want, and it's just fine. Does the 36 inches have to be entirely clear in your view or just partially clear to the extent that there is a 36 inch requirement? Are you saying it has to be completely clear? I think that there's items on it. Temporary small items that don't interfere with use. I think one of the maxims of constructing the law is that the law doesn't deal with trifles. I think it'd be a hard case to make. But these are numbers, and that's the value of the ADA standards. As this court has said in an NBOC decision in a different Chapman case, they've said these are objective standards. And that's the beauty of it. You know that if you comply with those standards, if someone comes in who needs more than 36 inches, you're not going to be held responsible. It can't be a subjective standard that whoever comes through your door, if there's some very athletic wheelchair user and can deal with three inches because they're just super flexible, it doesn't mean that the business gets a pass necessarily. I mean, you have to build it and operate it according to certain objective standards. And this is the standard. But you're saying your objective standard is really not objective because you can put various items on there and it would not be a full 36 inches. Well, I think that if they're temporary, if they're isolated, they're easily removed by the employee. When a wheelchair user goes up there to use it, I think it complies. And I'm just referring to what the DOJ's own position is. Remember, and this is really important, the DOJ removed nine technical assistance and guidance materials in December 2017. They went through and removed them off their website. It's kind of a purge of a lot of administrative materials. They left on there the one that we cited. To this day, if you go on their website right now, the DOJ is giving guidance to the entire world. And this is what they say, that the accessible sales counters must have their aisles clear and their lower counter space free of equipment and merchandise to be usable. And then they have a checklist. And that checklist says, is the full length, minimum three feet of the lower counter of the accessible checkout aisles or sales counter clear of merchandise and equipment? That's their guidance to the world today. And so that's one of the reasons why we don't, that's why Judge Fisher didn't give much credence to their DOJ if we interpret it to be in conflict with that. Because Kaiser says, if you have a position, it's not persuasive. We just don't give a lot of credibility to that. And you don't agree with Starbucks position that that refers to dual counters. You think that's a misreading of the statute? I do because, yes, Your Honor, it's never been used anywhere. There's not a single case law out there. None of the Starbucks decisions, the numerous star positions, not in Chapman, not in Kalani, not in any of the DOJ materials anywhere, not even in the DOJ's amicus brief. In this case, does anyone mention dual height counters or say that that's relevant to this discussion? It's just being made out of whole cloth. They're using one word where it says portion of, and therefore they're saying, therefore, ergo, it must mean that there's two heights. And I don't believe that that's the proper interpretation. Well, but the DOJ brief says that 904.41 separate length requirement is triggered only where an inch is high across its entire length. So isn't that endorsing the dual counter principle? I don't think it is, Your Honor. I don't think, I mean, there are counters that have dual use, and there's a portion of it that's used for transactions. These are transaction counters, and then there's a portion that could be something else. But I just don't see, I don't see anywhere where that's relevant. I mean, I don't see it ever come up. It's not in any of the materials, the guidance materials, the technical assistance materials, any of the issues, dual height that have been mentioned. And I think that Starbucks is looking at pictures, they see a picture where the DOJ has an image that has dual height, and they're saying that must be relevant to the discussion. And here's the thing, most counters, many counters are dual height because it's a little more difficult for those of us who are ambulatory and standing up to deal with the lower counter. So it's kind of a standard situation that you see. And they're saying, look, you have to have a portion, at least that's three feet long, that's usable by this long enough. And I think the regulations are very clear. You have to have 36 inches of usable, clear space. The DOJ has said it in their technical assistance materials. It's being published right now. This court's weighed in on it twice, both in Chapman and in Kalani. I think it's a fair and easy reading, and it does, and you know, the ADA is a remedial statute, it's supposed to be interpreted broadly to carry out its purposes. And so I think everything calls for this court to affirm its position that it's taken in the last two cases that they've had. I think my time's almost up. If I could reserve 15 seconds. Counsel, we'll give you a minute for rebuttal. Thank you. All right. Thank you, Mr. Handy. Ms. Vu? Ms. Vu, we can't hear you. Good morning, your honors. May it please the court. I'm here on behalf of Starbucks Corporation, the appellee in this case. So clearly the issue here in this case is whether or not the counter provided by Starbucks at this location complies with the ADA. And I don't think there's any dispute about what the counter looks like. Basically, it is less than, the counter provided is less than 36 inches long, and it is fully accessible at a height of less than 36 inches high. Well, the counter itself is longer than 36 inches, correct? Well, your honor, I think it's important to understand that just because they have this surface that is longer, it doesn't mean that that's a transaction counter. They basically built a surface so that they could put merchandise on it. And the actual amount of space provided to customers for transactions is actually considerably less than 36 inches. And that's what we're talking about, because the rule talks about how much transaction counter is provided. Do you agree that Starbucks does not, if it were applicable, that Starbucks does not comply with 904.4.1? So it complies with the exception to 904.4.1. That's not my question. Does it apply to, not the exception, but 904.4.1? Does it, if that were found to be applicable here, do you agree that Starbucks does not comply with that? I do. I do. But that is only one part of 904.4.1. There's the exception, which applies to the situation where the entire counter is provided to customers to use is less than 36 inches. And that is exactly what we have here. I mean, it's your position, though, under the exception that Starbucks would be within this rule if it provided just one inch of counter, correct? Absolutely, Your Honor, because believe it or not, the ADA standards don't require a business to provide any accessible counter at all in the first instance. It is only in the situation where they choose to provide transaction counters in the first place that then 904, then there is a requirement to provide an accessible counter. Well, they have, they've chosen here to provide a counter. Correct. And you say that they can provide a counter that only has two inches of use for disabled people under your exception? Yes, Your Honor, because the rules basically say that you're not required to have an accessible counter. If you provide no counter for anyone, essentially, then you're not required to provide an accessible counter. That's found in section 224 of the 2010 standards. It says, where provided, at least one of each type of sales counter and service counter shall comply with 904.4. In other words, Mr. Handy insists that there's this notion that people with the ADA requires accessible transaction counters for people with disabilities. It does not. He may decided that retailers or any businesses don't have to provide accessible counters. It's only if they choose to provide that they have to provide them in accordance with 904.4.1. And in this case, there is an exception that this counter squarely falls into. I mean, so the exception swallows up the rule, though, doesn't it? It doesn't at all, Your Honor, because the rule covers two different entirely different scenarios. Mr. Handy basically conceded that the dual height counter situation is the standard situation that you find in most retailers. In other words, you have a high counter, and then the rule says a portion of the counter has to be lowered and has to be 36 inches long. Now, why is that? Because if, in fact, you didn't have that rule, then you would have people without disabilities being able to they would get a counter to use, but the people with disabilities don't. So that's why there's a requirement for a lower portion. Now, the second part, the exception, is for a situation where everyone gets the same lower counter. So you actually have people with disabilities being able to use the counter. And there's, by the way, there's no magic to 36 inches, okay? Because clearly, the DOJ thinks 24 inches is just fine in alterations, or it's fine, 30 inches is fine for a forward approach. My point is that there's no study or any other finding in the regulatory record that says that 36 inches is the necessary amount of counter for a person with a disability to conduct a transaction. That just simply does not exist. Now, if I may, I'd like to address the Chapman decision for a minute, because Mr. McCandie makes a big issue of that. I'm just going to show you a picture of the counter in Chapman. This is from the reply brief at page 15. You can see here that this counter doesn't look that much different than the counter in this case. In other words, there's a telephone, there's a basket with stuff on it for sale, there are things on the counter, there's basically about 14 to 16 inches of space left for people to transact. Now, believe it or not, the Ninth Circuit found this to be a fully accessible situation. But isn't there a factual dispute here about whether there was that much counter that was available to Mr. Johnson? He said it was about, I thought, about eight inches or something. That is much wider than that. Well, Your Honor, the reason I'm showing you this is not because it's 16 that you have to maintain 36 inches of clear space, which is what the appellant is claiming, then the Ninth Circuit could not have concluded that this is okay. And I should also note that it is not just that the items were somehow temporary. Ninth Circuit, in its decision at page 1009 of the Chapman Appeal, said, first, it said, there is no evidence of presence of buried small items on the otherwise accessible sales counter to deprive wheelchair users of full and equal access to the use of the counters to their intended use, placing items for purchase and transacting sale. Later on, the court then talks about how they were also moved when basically Mr. Chapman wanted them moved. But the point is, again, this cannot possibly be okay under the Ninth Circuit precedent if there is a rule that says you must keep 36 inches clear. So Chapman actually supports our position, not this one. As far as Kalani goes, Kalani and also Crandall, which is addressed by the plaintiff, those two cases never considered the 904.4.1 exception. So the only issue was whether there's a duty to maintain. And basically everyone skipped over the fundamental proposition, which is you only have a duty to maintain something that you had to have had to be in the first place. Everyone jumped to the next part. But in fact, the duty to maintain doesn't create an independent obligation to maintain 36 inches. It just says you have to maintain whatever you are required to provide to make accessible in the first place. And in this instance, the exception says it is perfectly lawful to provide less than 36 inches of counter accessibility. Is it your position with respect to the Whitaker decision, which your adversary relies on, that that's wrongly decided? Or can you somehow distinguish that case? Sure. Your Honor, first of all, I mean, ELC Beauty, the Whitaker versus ELC Beauty case, is an outlier because we've got seven district judges that all agree that basically this counter configuration is compliant. The Whitaker case is about a different counter. And as I read the decision, I see nothing in there that tells you that the 904.4.1 exception was considered or that it was a dual head counter or a single head counter. We have no idea. So frankly, it just says that there's not enough information in there. Also, the court spends a lot of time denouncing like the DOJ amicus brief. But, you know, the compelling standard for compliance either. I think the judge basically said something about how the standard is you have to keep the counter mostly clear. I mean, I don't know where that even comes from. Mostly clear is not a concept that is in any regulation, the statute, or anything, or any decision, frankly. Well, it could be construed as maintaining something in an operable working condition, correct? Mostly clear means maintaining something in an operable working condition is set forth in the CFR regulation. Right, except for the fact that there is no, there's really no evidence that individuals with disabilities actually need a particular amount of space to transact. I mean, the, I should also note that this is not, I mean, if you reach this, if you affirm this decision, you're not, this is not going to result in an minimum standard for how, you know, how facilities need to be built. But if an individual with a disability needs more than what the 2010 standards required, then it can simply go under section 28 CFR 36.302, which is the requirement that businesses make reasonable modifications to their normal policies. Mr. Johnson could have asked Starbucks to move those items for that particular transaction so that he could transact. And they, and he, I'm sure they would have done it. But this issue isn't a reasonable modification case. He did not make that request. But the point is the ADA framework has ways in which to deal with providing access. So anyway, so that is, I would also- Ms. Vu, you're actually in overtime now. Why don't you go ahead and wrap it up? All right. Thank you. Well, let me just say that the, there is this, this counter clearly falls in the plain and unambiguous language of the section 904.4. In order for the court to go with the appellant's view of the world, the court would have to completely ignore it and just scratch it out. And principles of statutory and regulatory construction don't permit that. And finally, this notion that we should inject restrictions into the exception, like not technically feasible, you can only have a shorter counter if it's not technically feasible, has no support whatsoever. Where does that even come from? There's nothing in the language. It says that. And in fact, if you look not too far at 904.4, there's an exception in there too. And the DOJ knew how to limit the application of the exception when it wanted to. It did not do that in the 904.4 exception. All right. Thank you very much, Ms. Vu. Thank you. Mr. Handy, we're going to give you a minute and a half, actually, if we can. Okay. Thank you. A little extra bonus time. Just wait for the clock one second, Mr. Handy. So, minute 30. All right. You know what, Mr. Handy? I guess we can just settle on that. I'll let you go. It's okay. You can put a minute on the clock and I'll let you go an extra 30 seconds. So, go ahead, Mr. Handy. Okay. Thank you. Just four quick points. First of all, the exception doesn't apply here because they do have a counter that's longer than 36 inches. What they're saying is we only provide a small portion of it. In fact, under their interpretation, if they have a different merchandise configuration on a particular day, they put more items up for sale, maybe an advertising brochure, some other things, and they only provide eight inches, well, that's just fine because they're only providing eight inches. I mean, that's really their position. She admitted that they could have one inch. It doesn't matter. This can't be the standard. Whatever you decide to provide is what the size of your counter happens to be that day. That exception would destroy any sense of how wide a counter should be. Second of all, the DOJ says 24 inches is just fine. 30 inches is just fine. That's not what they say. They say that when there's forward approach and a wheelchair user's knees can go underneath the counter so you can come straight in, you only need 30 inches. Parallel approach is 36 inches. Alterations, because those are difficult and we have a lesser burden on businesses that are making alterations or removing barriers, can be as low as 24 inches. But there's still a length requirement. This idea that you can just do one inch, it just doesn't find any support in this. Second of all, the Chapman picture. She points to the Chapman picture and she says, look, there's items on here. And the Ninth Circuit found that's fine. The Ninth Circuit didn't find that's fine. The Ninth Circuit said that they removed the barriers. They probably were, first of all, it only existed on two or three of the 11 occasions. So that picture was representative of only a couple of occasions. And second of all, they removed the items so they could be used. That's what the Ninth Circuit said and focused on. So, you know, trying to make too much of that picture is a little bit silly. Finally, the Whitaker versus the LEC. She calls that an outlier opinion. It is true, it differs from the other cases, but there's a big factor. It was the only one of the decisions decided after Kaiser. And so all the other cases, remember Judge Alsop in this very case, he says, I don't know. Let's ask the DOJ. DOJ gave us a NICAS brief and he just went with it. And so he did not have the benefit of Kaiser. And that's one of the things that Judge Fischer says is, look, let's re-examine what kind of our or Seminole Rock deference we have to give. And there's a couple of things in there I think are very important. They said that, you know, the idea behind that deference is we have to reconstruct what they meant, who would know better. Remember, I love the example they give. If someone writes an email or a text, you're not sure what they're trying to say, you ask the person who wrote it. But that deference goes away when the interpretation conflicts with this previous interpretation. And that's what it does here. All right. Thank you very much, Andy. Thank you both, counsel, for your briefing and arguing this case. Very interesting and very helpful. This matter is submitted.
judges: Fernandez, Owens, Amon